(114 App. Div. 370.)

In re NEKARDA.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

ATTORNEYS—DISBARMENT—PROFESSIONAL MISCONDUCT—SUFFICIENCY OF EVI-
DENCE.

In proceedings to disbar an attorney, evidence examined, and *held*
sufficient to show unprofessional misconduct warranting his disbarment.

In the matter of Francis J. Nekarda, an attorney. Motion to dis
bar. Respondent disbarred.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM,
LAUGHLIN, and CLARKE, JJ.

Tompkins McIlvaine, for association of the bar, petitioner.
Paul Jones and Franklin Pierce, for respondent.

PER CURIAM. Specific charges in writing of professional mis-
conduct on the part of the respondent were presented to the associa-
tion of the bar of the city of New York. The association caused a
copy of the charges to be served on the respondent, and they were then
investigated by its grievance committee. The grievance committee
subsequently reported to the executive committee that the charges
should be presented to the Appellate Division. The executive com-
mittee, in the name of the association, then authorized the presentation
to the court of charges of fraud, deceit, malpractice, and gross un-
professional conduct in his office as an attorney and counselor against
respondent. The court decided that the charges were sufficient to re-
quire an answer. The respondent filed an answer, denying the material
charges. On the 20th day of April, 1905, the court appointed the
Hon. Henry W. Bookstaver referee to take testimony concerning the
matters put in issue by the answer, and report the same, with his opinion
thereon. On the 12th day of December, 1905, the referee presented his
report, containing specific findings upon the issues, together with an
exhaustive opinion of 52 typewritten pages, wherein he carefully
analyses and reviews the evidence and the claims of the respective par-
ties thereon, and he filed therewith the testimony. The matter was
brought before this court for final action on the referee's report and
opinion, and on the testimony taken by him, on the 9th day of March,
1906, and at that time it was argued and submitted.

The evidence has been carefully examined in the light of the argu-
ments of counsel for the respective parties. In the reception of evi-
dence the learned referee carefully safeguarded the rights of the
respondent. It is not deemed necessary to discuss the evidence at
length. We are convinced that it fairly sustains the charges. The
undisputed evidence shows that the respondent is a resident of this
department; that he was admitted to the bar on the 1st day of April,
1893; that in the month of December, 1893, he was duly retained
by Jan and Margarita Simek, who resided in the village of Nova Ves,
in Bohemia, to receive and collect legacies left to them in and by the
last will and testament of Katerina Simek, deceased, which was duly
admitted to probate by the Surrogate's Court of the county of New
York on the 14th day of August, 1894; that in the month of August,

1895, he received from the executor of the will the sum of $200, being for a specific legacy to said Jan Simek, and $700, being for a specific legacy to said Margarita Simek; that upon the final accounting it was found that each of said legatees was entitled to a further legacy of $393.27, owing to the fact that other legacies had lapsed, and on the 16th day of December, 1895, he received from the executor the amount of these legacies also, making the total amount received by him, as attorney for said legatees, the sum of $1,686.54. The respondent claims to have remitted to his clients the sum of $150 in money, in a registered letter duly addressed to them, and mailed on the 29th day of May, 1897, and the further sum of $700 in seven $100 United States treasury notes, inclosed in a registered letter, and mailed on the 4th day of August, 1897, addressed "Mr. Jan Simek and Margarita Simek, No. 2 Nova Ves, by Nova Kdyne, Bohemia." He attempts to explain this unusual method of transmitting money to a foreign country, where it would not pass, but would have to be sold at a discount, on the ground that he did it at the express request of his clients. The letter which he claimed before the grievance committee of the association of the bar as his authority for this course merely requested him to send it by registered letter, but on the hearing before the referee he claimed to have subsequently received a letter specifically directing him to send it in American or Austrian money. This letter, however, he was unable to produce, and asserts that it was stolen. It satisfactorily appears by the evidence that neither remittance was made, and that the respondent has appropriated to his own use the entire amount collected for his clients. He claims to have registered both letters. At first he claimed to have registered the letter with which he inclosed the $150 at the main post office, and then, when it was shown that there was no record of it, he asserted that he registered it at a substation up town. It appeared that the records at the substation had been destroyed. He produced a post office mailing receipt for a registered letter to his clients, which he testified was the receipt for this letter; but the date, excepting the year 1897, had been destroyed as he claims by fire by his placing a lighted cigarette upon the page of his letter book to which it was attached. He did not receive from his clients through the post office department the usual receipt for this letter, nor did he receive from them any acknowledgment thereof, or write them concerning it, until the time he claims to have inclosed the $700. The registered letter with which he claims to have inclosed the seven $100 bills was duly received by the clients of the respondent, but when it was opened the evidence shows that instead of bills it contained 14 sheets of tissue paper. The respondent, in letters to his clients after he had received the money, clearly conveyed the impression to them that it had not yet been collected. He did not deposit it in a separate account, but mingled it with his own funds, and the account in which it was deposited did not remain good for the amount. He does not satisfactorily show from what source he obtained the $150 he claims to have remitted. He claims that it was part of $200, constituting his share of $400, a cash collection received for professional services by his law firm, but his partner says that it was not customary to thus divide the amounts received by the firm. He did check out $700 from

a bank account on the day he claims to have mailed the $700, but three days later he opened an account in another bank, depositing $700 therein, and his explanation as to the source from which he obtained the $700 with which he opened the new account is neither satisfactory nor corroborated. Aside, therefore, from the exorbitant charges by which he concedes that he appropriated for his services $836.64, for which he does not satisfactorily show the consent of his clients or any warrant, we are convinced by the evidence that he made no remittance to his clients, and appropriated the entire amount collected to his own use. By this deception, fraud, and dishonesty he has forfeited his right to remain a member of an honorable profession, and the entry of an order disbarring him and striking his name from the rolls is directed.